Swanson v Queens Ball Park Co., LLC (2024 NY Slip Op 50587(U))

[*1]

Swanson v Queens Ball Park Co., LLC

2024 NY Slip Op 50587(U)

Decided on May 14, 2024

Supreme Court, Queens County

Caloras, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 14, 2024
Supreme Court, Queens County

Alexander Swanson, Plaintiff,

against
Queens Ball Park Company, LLC, STERLING METS, LP, 
 and STERLING METS OPERATIONS, LLC, Defendants.

Index No. 716592/2019

ATTORNEYS FOR PLAINTIFF (Swanson): 
DUSTIN ALEXANDER LEVINE 
Firm Name: ACAMPORA AND LEVINE ATTORNEYS AT LAW P.C. 
Address: 1615 Merrick Rd, Merrick, NY 11566
Phone:(516) 407-3400 
Other E-mails:annalisa@aclevlaw.com
maria@aclevlaw.com
jennie@aclevlaw.com
ATTORNEYS FOR DEFENDANTS (Queens Ball Park Company LLC et al.):
BENJAMIN DAVID GREENFIELD 
Firm Name: Wilson Elser Moskowitz Edelman & Dicker LLP 
Address: 150 E 42nd Street, New York, NY 10017 
Phone: 212-915-5492 
E-mail:Benjamin.Greenfield@wilsonelser.com

Robert I. Caloras, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 25 - 60 read on this motion by defendants, QUEENS BALL PARK COMPANY, LLC, STERLING METS, LP, and STERLING METS OPERATIONS, LLC, for SUMMARY JUDGMENT in their favor and dismissal of plaintiff's claims in their entirety.
According to the Amended Complaint, this case concerns an incident that occurred on June 5, 2019, during a baseball game at Citi Field ballpark ("Citi Field"), in Queens New York, operated by defendants. As indicated in the Amended Complaint, Plaintiff allegedly suffered severe personal injuries while in the stands as a spectator.
Defendants, QUEENS BALLPARK COMPANY, LLC, STERLING METS, L.P. and STERLING METS OPERATIONS, LLC ("defendants"), now move for an Order granting them summary judgment pursuant to CPLR § 3212. In support thereof, defendants submit, among other things, plaintiff's deposition transcript, two affidavits from directors at Citi Field, and an affidavit from Dr. David L. Gushue, Ph.D., a biomechanical engineer who investigated the facts surrounding plaintiff's accident. Plaintiff testified at his deposition that he was injured during a promotional event at Citifield (hereinafter referred to as "t-shirt launch event(s)") where tightly rolled t-shirts were launched into the stadium stands from air cannons (also called "gun(s)") held by defendants' employees on the baseball field. In the instant case, plaintiff stated at his deposition that during the launch of one specific t-shirt, he was hit in his right eye while standing on the bottom stair of Section 301 of the Citi Field stadium stands. Plaintiff also testified to the following:
• that he had been going to Citi Field (previously called Shea Stadium) his "whole life" and had attended approximately 100 games and "more than 20" t-shirt launch events prior to his accident,
• that he had never felt in danger when witnessing past t-shirt launch events, and he had never viewed a t-shirt launch event to be a "dangerous activity,"
• that on the day of his accident, he had been sitting in the second tier of the right field on the Pepsi Porch, but he left his seat and walked down "approximately ten rows" to try to increase his chances of catching a t-shirt,
• that when he saw t-shirt launch events in the past, the stadium personnel launching the shirt would aim the air cannon at "maybe 80 or 90 degrees" or a "70- to 85-degree angle . . ." but on the day of the alleged accident, plaintiff testified that a t-shirt was shot from "more of a 20— to 25— degree angle," or "between a 25- and maybe 35-degree angle,"
• that plaintiff "estimated[d] that there w[ere] 40 feet . . . from [the employee's] gun to [plaintiff's] eye,"
• that plaintiff "was watching [the employee] pretty intently to see where he was aiming the launcher to try to guess where the T-shirt would come down and as the T-shirt was being loaded, [plaintiff] noticed [the employee] looking down and [plaintiff] noticed the T-shirt launcher pointed pretty much in [his] direction, directly in [his] direction, without much of an angle" and
• that "it seemed as though [the employee launching the shirt] was either off balance or fumbling with the launcher before he shot the T-shirt that struck [plaintiff]," and it "seemed as though [that employee] was having a problem either loading the cannon or pulling the trigger or both" as the employee was "looking down at the gun while the cannon was being pointed at [plaintiff] at the time the gun was shot" and
• that plaintiff "d[id]n't know how fast [the t-shirt] travels . . . [he] d[id]n't know how hard it hit [him]."

Defendants also submitted a report by Dr. Gushue, who inspected the site of the accident on August 7, 2023, and conducted accident reconstruction using a dummy and the same model of air cannon as was used when Plaintiff was allegedly injured. Based on his study, he found, among other things, that "the distance . . . between the area where the T-shirt was shot from . . . [*2]to the first row of the section 301 where the dummy was positioned was 47 feet." Therefore, defendants argue, based on the evidence they submitted, that they did not breach any duty owed to plaintiff and they did not have a duty to protect or warn against any condition related to said promotional event, since it was not inherently dangerous and was open, obvious, and readily observable by plaintiff. In support thereof, defendants rely on the fact that plaintiff testified that he observed the cannon aimed in his direction just before the shirt that allegedly hit him was launched, plaintiff had substantial experience participating t-shirt launch events, and any danger presented by the t-shirt launch was open and obvious and readily observable by the plaintiff.
Defendants also point out that according to the affidavit of Brendan McKeon, Executive Director of In-Game Operations for the Mets, the t-shirt launch event "is one of the common and ordinary promotional events that has been conducted at each and every Mets game since the opening of Citi Field in 2009." Furthermore, defendants submit that according to Sara Bollock, Senior Director of the Building Command Center/FLSD, since Citi Field's opening, she was "unaware of any prior reports, notices, or complaints made by patrons at Mets games concerning prior similar . . . accidents of any kind involving a patron being injured. . . by a T-shirt propelled during a [t]-shirt [l]aunch promotional event . . . ." Based upon the foregoing, in conjunction with the fact that there was a large distance between where the t-shirt was shot from and where it landed and that plaintiff never felt in danger during past t-shirt launch events, defendants argue, among other things, that the t-shirt launch was open, obvious, and not inherently dangerous, and therefore they did not breach any duty owed to plaintiff. The Court notes that defendants also argue that any danger presented by the t-shirt launch was assumed by the plaintiff as a legal matter pursuant to the doctrine of primary assumption of risk. Therefore, defendants argue the complaint should be dismissed in its entirety.
In opposition, Plaintiff argues, among other things, that defendants failed to establish their prima facie case because they failed to eliminate issues of fact regarding defendants' employees' alleged negligence. Plaintiff claims that defendants breached their duty of care by allowing their employee to negligently fire the air cannon and said negligence caused plaintiff's injury. Plaintiff argues that his case rests on the alleged intervening negligence and recklessness of defendants' employee, who failed to properly secure the t-shirt air cannon and failed to hold his fire when (according to plaintiff's attorney's Memorandum of Law) the employee "well knew" that he was off balance, fumbling, and looking down.
Plaintiff also argues that, in opposition, he has presented issues of fact which preclude summary judgment in defendants' favor, specifically as to whether plaintiff assumed the risk in participating in a t-shirt launch event where a shirt was launched into the stands in an allegedly negligent manner. Plaintiff's submissions include, a report, titled, "RISK ASSESSMENT OF AIR CANNONS AT SPORTING EVENTS" ("Risk Assessment Report") which examines "point blank impact[]" where "the target is less than a meter away from the muzzle" of the air cannon. Said Risk Assessment Report, defines such impact as "the worst case scenario," and it does not explore other scenarios. Plaintiff also submits his own affidavit, wherein he stated that:
"While the cannon was resting on [defendants' employee's] knee, [defendants' employee] pointed the cannon at [plaintiff], pulled the trigger and shot the cannon while [t]he [employee] was still looking down. The T-shirt was thrust straight to [plaintiff] and was traveling so fast on a direct line from the air cannon striking [plaintiff] in [his] right eye. . . and [plaintiff] had no time to protect [him]self from the impact . . . . The [t-shirt was shot] at a straight 20 25-degree angle and the T-Shirt did not travel in an arc protectory [*3][(sic)]."
Based thereupon, plaintiff's attorney argues in his Memorandum of Law that "[d]efendants and defendants' employee well knew that aiming the air cannon . . . [in such a manner] would cause the plaintiff injuries." Plaintiff also argues that contrary to defendants' contention, he did not assume any risk in participating in the t-shirt launch because defendants failed to comply with the applicable standard of care. Relying on Atkins v. Glen Falls City Dist., plaintiff argues that although as a spectator at a baseball game he may have assumed the risk of being hit by a baseball or bat, he did not assume the risk of being hit by a "misfired" t-shirt, since the shirt (that allegedly hit plaintiff) exposed plaintiff to an enhanced risk of injury beyond the inherent risk in the nature of the sport (53 NY2d 325). Plaintiff argues he was not aware there was unreasonable, heightened risk, nor could he have appreciated the nature of the risk of being struck by an allegedly "misfired" shirt, since that risk was concealed. Thus, plaintiff argues not only have defendants failed to make their prima facie case, but he has presented issues of fact in opposition, thereby necessitating denial of defendants' motion.
In reply, defendants assert, among other things, that they have established their prima facie case, and that plaintiff has failed to raise any issue of fact in opposition. Defendants point out that the study cited by plaintiff analyzed a scenario entirely different from the one in this case, and therefore, has no application here. Defendants also submit the rebuttal affidavit of Dr. David Gushue who stated therein that plaintiff's contention that the t-shirt that hit him was "misfired" from an air cannon oriented at a "20-25 degree angle" is scientifically impossible, and a shirt shot at 20-25 degrees may not have even cleared the outfield fence. Dr. Gushue also stated that for the t-shirt to travel in a "direct line" to where plaintiff was standing (on the first row of the upper deck of section 301), the air cannon had to be oriented at a minimum angle of 62 degrees, from a distance of at least 47 feet, and that "[b]ased on the laws of physics, the velocity of the T-shirt was slowed substantially during the vertical course of it's travel to the upper right field deck due to air resistance and the effect of gravity during flight." Defendants also reassert that plaintiff assumed the risk by comparing the facts of this case to those of Hawley v Binghamton Mets Baseball Club Inc., where the court found that "plaintiff should have reasonably expected to catch balls with varying trajectories while participating in a [baseball] pop-fly contest (262 AD2d 729, 731-32 [3d Dept 1999]). Defendants argue in reply that (just as the Court ruled in Hawley), plaintiff in the instant case should have reasonably expected that t-shirts could be shot with varying trajectories, especially if plaintiff was positioning himself in as direct a position from the launching shot as he thought possible. Thus, defendants argue that plaintiff has failed to raise an issue of fact in opposition; thus, dismissal of this matter is warranted.
The proponent of a summary judgment motion must tender evidentiary proof in admissible form eliminating any material issues of fact from the case (see Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). Once this showing has been made, the burden shifts to the non-moving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution (see Alvarez, 68 NY2d at 320; Zuckerman v City of New York, 49 NY2d 557 [1980]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]).
"Property owners . . . owe a duty of reasonable care under the circumstances to keep their premises safe" (Aloi v Dubriske, 203 AD3d 998 [2d Dept 2022]). "As the proponents of the [*4]motion for summary judgment, the defendants ha[ve] the burden of establishing, prima facie, that they neither created the [hazardous] condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it" (Maharaj v Kreidenweis, 214 AD3d 717, 719 [2d Dept 2023]; see also Drago v DeLuccio, 79 AD3d 966 [2d Dept 2010]). "However, a landowner has no duty to protect or warn against conditions that are not inherently dangerous and that are readily observable by the reasonable use of one's senses (Groon v Herricks Union Free School Dist., 42 AD3d 431, 432 [2d Dept 2007]; see also Bretts v Lincoln Plaza Assoc., Inc., 67 AD3d 943, 944 [2d Dept 2009]).
In the instant case, this Court finds that defendants have established their prima facie entitlement to summary judgment. The record makes clear that plaintiff was familiar with t-shirt launch events, having participated in over 20 of them and having attended over 100 baseball games at Citi Field where such events were "common and ordinary." Furthermore, not only was plaintiff aware of the way a t-shirt launch event generally took place, but he testified that on this occasion, he "intently" observed defendants' employee launching the shirt and intentionally positioned himself directly in front of what he predicted would be the shirt's path through the air. Therefore, defendants have established that the t-shirt launch event was open and obvious, and not inherently dangerous to plaintiff.
This Court also finds that plaintiff's claim that defendants were negligent because their employee was "off balance," which caused the t-shirt to "misfire" at an angle of approximately 25 degrees (rather than approximately 85 degrees), which in turn caused the shirt to move as a faster projectile than a typical t-shirt launch, which prevented plaintiff from having enough "time" to "protect" himself, amounts to nothing more than speculation. While a lay witness may give testimony in the form of an opinion or inference, such testimony is only admissible when the testimony:
"(a) is rationally based on the witness's personal perception;

 (b) is within the ambit of common experience of that of a particular witness; and
(c) would be helpful to the finder of fact in understanding the witness's testimony or in determining a fact in issue, especially when facts cannot be stated or described in such a manner as to enable the finder of fact to form an accurate judgment about the subject matter of the opinion or inference."

(Guide to NY Evid., Opinion of Expert Witness § 7.03(a-c)). Here, plaintiff has not explained how he determined the angle of the air cannon, nor has he provided a basis for how he determined that t-shirts shot at a low degree angle (ie. approximately 25 degrees) travel faster than shirts shots at a high degree angle (ie. approximately 85 agrees). In fact, plaintiff testified that he did not know in general how fast a shirt (launched from an air cannon) travels, nor did he know how fast the shirt that hit him had been traveling. Moreover, while plaintiff did testify he had attended about 20 t-shirt launches, at no time did he state that he had any experience beyond this case in estimating the angles of projectiles launched from air cannons nor has plaintiff indicated any ordnance experience (see Swoboda v We Try Harder, 128 AD2d 862 [2d Dept 1987](holding "[i]n the absence of a showing that [lay witness] was qualified to give an estimate of a specific speed at which a motorcycle was traveling, such testimony was inadmissible opinion evidence"), see also Larsen v Vigliarolo Bros., Inc., 77 AD2d 562, 562 [2d Dept 1980](". . . such rule [regarding testimony as to automobile speeds] is premised upon the prevalence of automobiles in our society and the frequency with which most people have to view them at various speeds. However, the same may not be said about motorcycles."). Nonetheless, [*5]even if this Court were to accept plaintiff's lay witness testimony regarding the physics involved in the t-shirt launch, plaintiff has failed to indicate that the difference in t-shirt launch angle and thus t-shirt airtime, would have led to a different result (ie. plaintiff not being injured). Plaintiff testified that he had never caught a shirt at a t-shirt launch event. Therefore, plaintiff does not have an experience of handling a shirt launched in his direction against which he may compare this one. Here, determining from approximately 47-feet away the precise angle of an air cannon is far from a prevalent experience in our society. Participation in approximately 20 t-shirt tosses does not a qualified witness make (see Swoboda, 128 AD2d at 863). Therefore, this Court finds that defendants met their prima facie burden, establishing that they breached no duty to plaintiff, as the t-shirt launch was open and obvious, and not inherently dangerous.
In opposition, plaintiff failed to raise a triable issue of fact. At the outset, the Court notes that plaintiff's attorney's claim in his Memorandum of Law that defendants and defendants' employee "well knew that aiming the air cannon at a 20-25-degree angle instead of an 80-90 projected angle . . . would cause the plaintiff injuries" is unsupported by the evidence. Plaintiff's attorney has failed to indicate he has any personal knowledge of the facts, and therefore, his comments are insufficient to raise a triable issue of fact (see Barbieri v D'Angelo, 128 AD2d 661, 661 [2d Dept 1987], ("The affirmation of the plaintiff's attorney, who had no personal knowledge of the facts asserted therein, was insufficient to raise a triable issue of fact.)). Additionally, for the reasons set forth by defendants in their reply papers, the Court finds the Risk Assessment Report has no bearing on this case.
The Court is also not persuaded that plaintiff raised issues of fact regarding whether he assumed the risk and whether defendants failed to exercise reasonable care under the circumstances. While "[t]he doctrine of primary assumption of the risk applies not only to participants in a qualified activity, but also to bystanders or spectators who have placed themselves in close proximity to it," here, plaintiff's accident occurred when he was more than a mere spectator. McKay v Rockland Gaelic Athletic Assn., Inc., 187 AD3d 888 [2d Dept 2020]. At the time of plaintiff's accident, two events were taking place: the t-shirt launch event and the baseball game. Plaintiff was a spectator at the baseball game, but he was a participant in the t-shirt launch event. Plaintiff's testimony, including that he moved closer to the air cannon and placed himself in what he hoped to be the t-shirt's direct path, makes his role as a participant in the t-shirt launch event clear. "A plaintiff is barred from recovery for injuries which occur during voluntary sporting or recreational activities if it is determined that he or she assumed the risk as a matter of law' " (Rueckert v Cohen, 116 AD3d 1026, 1026 [2d Dept 2014]). "[B]y voluntarily engaging in a . . . recreational activity, a participant assumes, or consents to, the commonly appreciated risks that are inherent in and arise out of the activity generally, and which flow from the participation (id at 894-5). As a frequent attendee at Citi Field games where t-shirt launch events were common and ordinary, and as an approximately 20-time participant in t-shirt launch events, plaintiff was familiar with the conditions associated with the launches, including that the t-shirts were not launched at precisely the same angle each time nor to the exact same place in the stands. Plaintiff should have reasonably expected the shirts would reach the stands after travelling varying arcs and at slightly varying speeds (see Hawley v Binghamton Mets Baseball Club Inc., 262 AD2d 729, 731-32 [3d Dept 1999] (holding baseball fan was aware of and thus assumed unique risks inherent in trying to catch fly balls that were part of a promotional event, and operator of pitching machine did not enhance risk to fan by launching balls at varying trajectories). Moreover, the court notes that plaintiff acknowledges he did not have a good "eye [*6]on the ball" (or in this case towel), which quite possibly caused him to fail to catch the incoming towel, and this error resulted in his being hit by the launched towel, or as appropriate here, a "hit-by-pitch." Regardless, plaintiff has failed to raise a triable issue of fact. In light of the foregoing, the Court need not addressed plaintiff's remaining contentions. Accordingly, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed in its entirety.
DATED: May 14, 2024
ROBERT I. CALORAS, J.S.C.